UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:08CV-59-JHM

CYNTHIA L. FRANKENBERG                                             PLAINTIFF

V.

JOHN E. POTTER, POSTMASTER
GENERAL, UNITED STATES POSTAL
SERVICE                       .                                           DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment on Plaintiff's claims of age discrimination and retaliation under the Age Discrimination and Employment Act, 29 U.S.C. § 623, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, respectively. Fully briefed, the matter is ripe for decision. For the reasons that follow, Defendant's motion is **GRANTED**.

### I. FACTS

Plaintiff worked as a Sales Service Associate at the Postal Store in Glasgow, Kentucky from 2002 to 2007. On December 15, 2006, she was out on sick leave but came into work to pick up her paycheck. At that time, her supervisor Andrea Dunn told her that she would need a doctor's note for her absence. Plaintiff allegedly replied by telling Dunn to stop harrassing her. She then took her paycheck and left the building. Rather than leave the premises, however, Plaintiff went back to her vehicle and decided

1

that her husband should speak with Dunn or Postmaster Larry Bolton about the supervisor's perceived mistreatment of the Plaintiff.  Plaintiff therefore unlocked the employee entrance with her key and let her husband into the facility.

Around this time, Andrea Dunn noticed a man walking on the workroom floor. She knew that he was not a Postal employee and approached him to inquire who he was and why he was there.  The man, of course, was Plaintiff's husband.  Dunn promptly told Mr. Frankenberg that he needed to leave because he was not allowed on the workroom floor without his wife.  Plaintiff's husband "proceeded to get up into [Dunn's] face and told her not to talk to his wife like that . . . . He pointed his finger in her face, saying 'you better not ever talk to my wife like that again.'" (Defendant's Ex. #15, p. 1) (quotation marks added).  Brandon Puckett, a clerk, overheard this exchange and told Plaintiff's husband to leave the building or they would call the police.

Thereafter, Mr. Frankenberg was escorted to the door.  On the way there, Andrea Dunn noticed Plaintiff step out from behind the rural route 2 carrier case.  Dunn told Cynthia Frankenberg that "[she] should know better than to have unauthorized people on the workroom floor," and, according to Plaintiff, "[p]ractically, push[ed] [her] and [her] husband out the door." (Plaintiff's Reply and Response, p. 5).  The Frankenberg's left the building, but did not immediately walk away.  Through the glass, Plaintiff's husband once again pointed his finger at Andrea Dunn and told her that she "better leave his wife alone." (Defendant's Ex. #13, p. 6).

On December 18, 2006, Plaintiff met with Dunn and Bolton for a pre-disciplinary

2

discussion related to this incident. Plaintiff explained to them that she did not let her husband into the facility alone, but that she was not exactly next to him, and did not really hear what he and Dunn discussed. Ultimately, Dunn and Bolton concluded that Plaintiff would be disciplined because she had knowingly allowed her husband to enter an employee-restricted area for the purpose of threatening her supervisor. They also decided that Frankenberg was "less than candid" during her interview because Supervisor Ellis saw her return to her car for a while after letting her husband into the facility and because her consistent response to their questions was "I do not recall." (Defendant's Ex. #13, p. 2; Defendant's Ex. #14, p. 2).

On January 11, 2007, Plaintiff was issued a Notice of Removal. The Post Office based its decision to fire the Plaintiff, in part, on her history of "serious misconduct."[1] (Notice of Removal, p. 1, 5). This history included the letter of warning she received on December 6, 2005, for manipulating a point-of-sale terminal in an attempt to cover-up an error with respect to a money order; the seven-day suspension she received on April 10, 2006, for being so "angry, loud and upset" with co-worker Jennifer Bybee "that customers were asking . . . what the problem was"; and the fourteen-day suspension she received on October 11, 2006, for being "really loud in front of customers" in the process

---

[1] The record suggests that there was discipline in Plaintiff's employment file as early as the summer of 2004, including three letters of warning as of September 2005. However, the Court assumes that this history is not the "serious misconduct" relied upon by the Post Office in making its termination decision (after all, the letter specifically referenced the more recent and active discipline) and therefore pays it no heed.

of wrongfully criticizing another co-worker, Donna Creek. (Defendant's Ex. #22, p. 13; Defendant's Ex. #11, p. 1, 22).

On April 24, 2007, Cynthia Frankenberg filed a complaint with the Equal Employment Opportunity Commission ("EEOC") claiming that her termination was based on illegal sex or age discrimination or retaliation for her prior EEO activity.[2] This complaint was investigated and assigned to an Administrative Law Judge ("ALJ"). On December 31, 2007, the ALJ dismissed the complaint for failure to state a prima facie case of discrimination or retaliation. Plaintiff now brings suit on the same facts in federal court under the Age Discrimination and Employment Act, 29 U.S.C. § 623, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Defendant moves, inter alia, for summary judgment.

## II. STANDARD OF REVIEW

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter

---

[2] Plaintiff's retaliation claim stems from her complaint to the Equal Employment Opportunity Commission ("EEOC") on December 24, 2005, wherein she asserted that she had been discriminated against on the basis of sex and age after being denied the opportunity to be trained as an acting supervisor or to participate in the Associate Supervisor Program. That complaint was ultimately dismissed because the employer's decisions were based on the active discipline in Plaintiff's file, which as a rule precluded training the Plaintiff for supervisory positions. Plaintiff was given a Notice of Final Action letter on October 18, 2006, which detailed her rights and obligations if she wished to appeal the EEOC decision. (Defendant's Ex. #1, Notice of Final Action letter). The letter provided that she had 30 days to appeal to the Office of Federal Operations or 90 days to file an action in Federal District Court. Plaintiff did neither.

of law. Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).  The rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Defendant argues that Plaintiff's claims of age discrimination under the Age Discrimination and Employment Act, 29 U.S.C. § 623 and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, should be dismissed because Frankenberg has failed to state a prima facie case for either cause of action.  In addition, Defendant contends that even if Plaintiff has stated a prima facie case for either of these claims, summary judgment is proper because the Post Office has offered legitimate

reasons for Frankenberg's discipline and termination and she has failed to show that those reasons are pretexts for unlawful discrimination. The Court considers these arguments in turn.

    A.  Age Discrimination

Defendant first argues that Plaintiff has failed to make out a prima facie case of discrimination under the Age Discrimination and Employment Act ("ADEA"). In general, the ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Where, as here, a plaintiff offers only indirect evidence of discrimination, she may establish a prima facie case under the ADEA by showing: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) similarly situated non-protected employees were treated more favorably. Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 317 (6th Cir. 2007); Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 511 (6th Cir. 2004).

If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 401-11 (6th Cir. 2008). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the

evidence that the proffered reason is pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). This means that in order to withstand a motion for summary judgment a plaintiff must show that there is a triable issue of fact upon which a jury could reasonably find that more likely than not the employer's reason is a pretext for unlawful discrimination. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir. 1994).

In this case, Defendant argues that Plaintiff has not satisfied her prima facie burden because she has not shown that a similarly situated individual was treated more favorably. "[T]o be deemed 'similarly situated' in the disciplinary context, the individuals with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (citation omitted).

For purposes of this analysis, the then-forty-eight-year-old Cynthia Frankenberg compares herself to her then-twenty-nine-year-old co-worker Jennifer Bybee. According to Plaintiff, she and Bybee were "similarly situated" at the time of the adverse employment actions because they worked for the same supervisor, held the same job, and "Bybee was also rude to Frankenberg on March 27 and September 27 . . . and not seriously disciplined with a 7-Day Suspension or a 14-Day Suspension." (Complaint, p. 10). The Court finds this comparison inapt.

There is no doubt that Bybee and Plaintiff worked for the same supervisor and held the same job. However, Plaintiff's contention that she and Bybee were "similarly situated" because they were both rude overlooks crucial distinctions. Most obviously, Plaintiff's conduct on March 27, 2006, was not the sole basis for her seven-day suspension. That suspension was also justified by Plaintiff's repeated interruption of her supervisor during the pre-disciplinary interview and a rude comment she made on March 20, 2006, in the presence of customers. Furthermore, even if Plaintiff had committed no other misconduct, it is clear that the Post Office found her actions on March 27, 2006, "rude" not merely because of what she said to Bybee, but because Plaintiff was the persistent instigator of the conflict: she went back to the break area "at least two times to confront Ms. Bybee" while Bybee was on her lunch break. (Defendant's Ex. #11, p. 13).

As for Jennifer Bybee's alleged rudeness to the Plaintiff on September 27, 2006, and the Post Office's alleged dissimilar treatment of Bybee for that rudeness, Plaintiff has failed to support these allegations with any evidence. The only conduct in the record that appears to have happened on that date is Plaintiff's allegedly rude treatment of Donna Creek (and Andrea Dunn's corresponding warning to the Plaintiff that she might be sent home). Jennifer Bybee was interviewed as a witness to that event, but there is nothing in the record to suggest that she was in any way involved. Moreover, even assuming that Bybee was involved, there is no evidence to suggest that the Post Office's treatment of

her was unjustifiably different from its treatment of the Plaintiff.[3]  Accordingly, the Court finds that Plaintiff has failed to carry her burden of stating a prima facie case of age discrimination because she has not identified any similarly situated individuals who were treated more favorably.

B. Retaliation

Defendant also argues that Plaintiff's retaliation claim must fail for lack of a prima facie case.  To make out a claim of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000) (citations omitted).  If and when a plaintiff has established a prima facie case, the burden of production once again shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If the employer carries that burden, the plaintiff bears the burden of demonstrating that the employer's reason is pretextual.  Blair v. Henry Filters, Inc., 505 F.3d 517, 524 (6th Cir. 2007).

In this case, it is undisputed that Plaintiff engaged in a protected activity in

---

[3] On the contrary, to the extent Frankenberg alleges that "she never brought up" Jennifer Bybee's rudeness until her discipline and that Bybee did "go[] to [the] Defendant and complain" there can be no differential treatment because the Post Office was only on notice of Bybee's grievance, not Plaintiff's. (Complaint, p. 7).

pursuing a complaint with the EEOC; that the Defendant was aware of that protected activity; and that Plaintiff was disciplined repeatedly and ultimately fired subsequent to the filing of her EEOC complaint. Defendant argues, however, that Plaintiff has offered no evidence of a causal connection between the protected EEO activity and her termination or discipline. Plaintiff, on the other hand, contends that she has established causation via temporal proximity because the adverse employment action, including her termination, occurred after she complained to the EEOC.

Generally-speaking, temporal proximity alone is insufficient to establish causation. Nguyen v. City of Cleveland, 229 F.3d 559, 566-67 (6th Cir. 2000); Cooper v. City of N. Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986). However, the Sixth Circuit has recently held that temporal proximity can satisfy the causation requirement "[w]here an adverse employment action occurs *very close in time* after an employer learns of a protected activity." Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008) (emphasis added); Howington v. Quality Restaurant Concepts, LLC, 298 Fed. Appx. 436, 447 (6th Cir. 2008); cf. EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997) (explaining the basic rule that a plaintiff must "put forth some evidence" from which a jury could reasonably draw an inference of causation "between the retaliatory action and the protected activity").

Here, Plaintiff argues that an inference of causation is proper because she received the letter of warning two weeks after, and was fired thirteen "short" months following, her first complaint to the EEOC. (Plaintiff's Reply and Response, p. 6). The Court

disagrees. Contrary to Plaintiff's contention, the record shows that she did not receive the letter of warning two weeks *after* her complaint to the EEOC; rather, she received the letter on December 6, 2005, almost three weeks *before* her EEOC complaint was filed. (Complaint, p. 4; Plaintiff's Ex. #5; Defendant's Ex. #8; Defendant's Ex. #17, p. 2). Plaintiff's bare assertion that her complaint to the EEOC "was filed" in "November of 2005" is untenable given that the filing date on the complaint is December 24, 2005, and the complaint itself references conduct occurring both before and after December 6 of that year. Id. Consequently, there can be no inference of retaliation with respect to the letter of warning because there is no evidence that the employer knew of the EEOC activity (assuming there was such activity) when the letter was issued.

      This leaves Plaintiff's seven-day suspension, fourteen-day suspension, and termination. Plaintiff's declaration that thirteen months is a "short" period of time notwithstanding, however, none of these adverse employment actions can sustain an inference of causation via temporal proximity. The fact of the matter is that they did not occur "very close" in time to Plaintiff's EEOC complaint: the seven-day suspension was issued on April 10, 2006; the fourteen-day suspension was issued on October 11, 2006; and the letter of removal was issued on January 11, 2007. Cf. Mickey, 516 F.3d at 525 (finding inference of causation where employee was fired the very same day his employer learned of his EEOC activity); McNett v. Hardin Cmty. Fed. Credit Union, 118 Fed. Appx. 960, 965 (6th Cir. 2004) (finding same on gap of thirteen days).

      To be sure, Plaintiff also contends that there was some procedural unfairness that

11

would tend to show causation because "management never asked her for any statements" and instead just "had questions [for] . . . the plaintiff . . . based on Jennifer Bybee's complaints." (Plaintiff's Reply and Response, p. 3). However, Plaintiff has not shown or even alleged that the Postal Service's decision not to take her "statement" and instead "question" her is anything other than the usual practice. cf. Hamilton v. General Elec. Co., --- F.3d ---, 2009 WL 331260, *5 (6th Cir. 2009) (finding causation where there was a gap of less than three months and the employee testified that the employer watched him with "heightened scrutiny" during that time). Her observation that the Union took her "statement" is no answer because it does not speak to the propriety of the Postal Service's investigation.[4] Accordingly, the Court finds that Plaintiff has not stated a prima facie case of retaliation because no jury could reasonably conclude that her EEOC activity caused her discipline or termination.

C. Pretext

Defendant next argues that even if Plaintiff had established a prima facie case of age discrimination or retaliation, the Postal Service has offered legitimate reasons for Plaintiff's discipline and termination—e.g., her inability to treat her co-workers with respect, her history of serious misconduct, and her violation of Postal Service policy when she allowed her husband into a restricted area of the Post Office for the purpose of

---

[4] In fact, it strikes the Court as unremarkable that the Postal Service would take the "statements" of the grievants (Bybee and Creek) while the Union would take the "statement" of the employee alleging that she was the victim of improper disciplinary action (Frankenberg).

12

confronting her supervisors—and Plaintiff has failed to show that these reasons are pretexts "designed to mask" unlawful retaliation or discrimination. (Defendant's Ex. #17); Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 544 (6th Cir. 2008). The Court agrees.

To establish pretext, a plaintiff must show that the proffered reason had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). In this case, Plaintiff "denies being rude"; categorizes her problems with co-workers as "personality conflict[s] or difference[s]"; opines that "being rude while no supervision is present, just doesn't Qualify [sic] for this serious type of discipline [i.e., suspension]"; and believes that it was "an innocent mistake on a money order" that lead to the letter of warning which also, in her view, "should have been a job discussion." (Complaint, p. 7; Plaintiff's Brief, p. 3-4). In other words, Plaintiff contends that her conduct was individually and collectively insufficient to motivate the Post Office's various disciplinary actions.

The Court finds Plaintiff's argument unpersuasive. The Sixth Circuit has explained that evidence tending to prove that a proffered reason is insufficient to have motivated the adverse employment action "ordinarily[] consists of evidence that other employees, particularly employees not in the protected class, were not [disciplined] even though they engaged in substantially identical conduct to that which the employer contends motivated its [discipline] of the plaintiff." Manzer, 29 F.3d at 1084. Here, as

13

discussed in part III.A, *supra*, Frankenberg has offered no such evidence. Rather, her critique of the Postal Service's decisions to discipline her and terminate her employment is effectively a claim that her employer lacked "just cause."[5]

This is not a "just cause" case. The issue before the Court is whether the employer's decision was an illegally discriminatory one, not whether the employer made the best decision to discipline or fire the Plaintiff, or even whether the employer's decision was reasonable. Stein v. National City Bank, 942 F.2d 1062, 1065 (6th Cir. 1991) ("It's not the function of Courts to judge the wisdom of particular business policies . . ."); McDonald v. Union Camp Corp., 898 F2d 1155, 1162 (6th Cir. 1990). Thus, without more, a lack of "just cause" is legally insufficient to show that the Postal Service's legitimate reasons for disciplining Frankenberg and ultimately terminating her employment were pretexts for unlawful discrimination. See generally, Manzer, 29 F.3d at 1084 ("'just cause' arguments . . . must not be allowed to creep into an employment discrimination lawsuit.").

The Sixth Circuit's decision in Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992) provides a useful illustration. In that case, the court held that an employee who denied that her actions constituted "misuse of Hospital property . . . . without producing substantiation for the denial . . . [could not] withstand a motion for summary judgment" because she failed to show that her employer's reasons for firing her were pretextual. Id.

---

[5] Indeed, she devotes multiple pages in her complaint and memoranda explicitly to this idea.

14

at 584-85; cf. Hamilton v. General Elec. Co., --- F.3d ---, 2009 WL 331260, *5 (6th Cir. 2009) (reversing summary judgment for defendant where the underlying facts themselves were in dispute). To put it another way, the court found that an aggrieved employee's subjective skepticism of her employer's judgment, without a showing of why that judgment was motivated by unlawful discrimination, could not overcome the employer's proffered reasons for taking adverse employment action against her.

The same reasoning applies here. Cynthia Frankenberg does not deny that she made certain comments to her co-workers Jennifer Bybee and Donna Creek that lead to her seven- and fourteen-day suspensions. (Plaintiff's Brief, p. 4-5; Plaintiff's Reply and Response, p. 3, 6). Nor does she deny that her husband made certain comments to Andrea Dunn when she allowed him into the Post Office for the purpose of confronting her supervisors. (Plaintiff's Brief, p. 7-9; Plaintiff's Reply and Response, p. 4-5). Rather, Plaintiff contends that her termination was unjustified because her suspensions were "fraudulent"; and her suspensions were fraudulent, she argues, because she subjectively believes that she was never "loud" or "rude."[6] (Complaint, p. 7; Plaintiff's Brief, p. 3-4).

Frankenberg's subjective skepticism of the Postal Service's judgment, however, is insufficient to show pretext. Put simply, no reasonable juror could conclude that the Postal Service's non-discriminatory reasons were more likely than not a pretext for

---

[6] Plaintiff's contention that there was some form of procedural unfairness with respect to the taking of employee statements is insufficient to show pretext for the same reason it is insufficient to show the element of causation in her retaliation claim discussed in III.B *supra*, i.e., Plaintiff has offered no evidence that the practice was out of the ordinary.

15

unlawful discrimination because Plaintiff has not shown that the proffered reasons lacked a basis in fact, failed to motivate the Postal Service's decisions, or were insufficient to motivate its decisions—she has only shown that she disagrees with them. Accordingly, the Court finds that even if Plaintiff had stated a prima facie case of age discrimination or retaliation, summary judgment for the Defendant is proper.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion is **GRANTED**.

cc: Counsel of Record